UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                    :
UNITED STATES OF AMERICA,              :          CASE NO. 5:14-CR-00289
                                                    :
                    Plaintiff,                  :
                                                    :
vs.                                                 :          OPINION & ORDER
                                                    :          [Resolving Doc. 21]
LUKE D. PATTERSON,                       :
                                                    :
                    Defendant.               :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        The Government charges Defendant Luke Patterson with being a felon in possession of a

firearm.  Patterson moves to suppress evidence obtained during and as a result of a search of his car

on the night of July 30, 2014.  Although he concedes that the police had probable cause to pull him

over for running a red light, Patterson argues primarily that the open container offense he was charged

with in state court was not an arrestable offense and that the police therefore lacked justification to

arrest him or search his car.[1/]  Moreover, he says, his statements obtained while detained and evidence

obtained during a later search of his house pursuant to a warrant should also be excluded as fruit of

the poisonous tree.  The government responds that the evidence should not be suppressed because

the arrest was proper and, in the alternative, that at least some of the evidence should not be

suppressed because its discovery was inevitable.[2/]

        The Court held a hearing on Patterson's motion on November 14, 2014.  Matthew Scherick

and Robert Miller, the two officers present the night Patterson was arrested, testified at the hearing.

-----

[1/]Doc. 21.
[2/]Doc. 22.

Case No. 5:14-CR-00289
Gwin, J.

For the reasons below, the Court **DENIES** Patterson's motion to suppress.[3]

## I. Background

On the evening of July 30, 2014, Officers Matthew Scherick and Robert Miller of the Akron Police Department were patrolling their assigned area.[4]  Scherick, who was driving, saw a gold Jeep Liberty go through a red light directly in front of him and immediately activated his lights to pull the car over.[5]  About three blocks later, the car, which had been traveling in the left lane of South Main Street, stopped at a stop sign, turned left, and pulled over on Rosewood Avenue.[6]

Once the Jeep came to a stop, Scherick and Miller exited their car and approached it. Scherick went to the driver side and Miller went to the passenger side.[7]  When Scherick got to the driver's door, he directed the driver, Defendant Patterson, to unlock the door and exit the car.[8]  While looking in the window, Scherick saw two beers in the center console, one was open.[9]  When Patterson exited the car, Scherick immediately arrested him for having an open container of an alcoholic beverage in a motor vehicle and placed him in the back of the police car.[10]

The parties dispute whether Scherick meant to arrest Patterson for violating Akron's open container law, an arrestable fourth degree misdemeanor,[11] or Ohio's open container law, a non-

---

[3] This opinion and order supersedes the Court's bench ruling on this issue, which differs in some ways.  *See United States v. Reid*, 357 F.3d 574, 580 (6th Cir. 2004) ("In both civil and criminal cases, a trial court is empowered to revisit any of its previous non-final rulings . . . .").

[4] Suppression Hr'g Tr. at 8.

[5] *Id.* at 14-15.

[6] *Id.* at 15.

[7] *Id.* at 20-21.

[8] *Id.* at 17.

[9] *Id.* at 17, 52.

[10] *Id.* at 18, 20.

[11] Akron, Ohio Code of Ordinances §§ 91.07(B)(2), 91.99(D).

Case No. 5:14-CR-00289
Gwin, J.

arrestable minor misdemeanor.[12]  As discussed below, the Court has no need to reach this question because the subjective intent of the arresting officer is irrelevant to determining the legality of the arrest.

Meanwhile, Miller secured the car's two passengers.[13]  He then decided to search the car for further evidence of open containers.  At the hearing, he explained, "[I]f somebody has an open container, anybody else can have one."[14]  But before he made it to the car, Miller saw a gun in the storage compartment in the still open front driver side door.[15]  He seized and secured the gun.[16]

A records check revealed that Patterson had been driving on a suspended license and that he was not the owner of the car.[17]  The officers had the car inventoried and towed under an Akron Police Department policy that requires towing when the driver has a suspended license and it is not possible for the car's owner to give permission for a properly licensed driver to secure the vehicle in a legal parking spot.[18]

As a result of the arrest, the government also obtained other evidence, including statements from Patterson and physical evidence obtained during a subsequent search of Patterson's house pursuant to a warrant.[19]  In addition to seeking suppression of the gun, Patterson also seeks the suppression of this evidence as fruit of the poisonous tree.

---

[12]/*See* Ohio Rev . Code §§ 4301.62(B)(4) (defining the offense), 4301.99(A) (classifying the offense as a minor misdemeanor), 2901.26 (prohibiting, with several exceptions not relevant here, arrest for a minor misdemeanor).

[13]/Suppression Hr'g Tr. at 68.

[14]/*Id.*

[15]/*Id.* at 69 ("The instant I walked around the driver's door I could clearly see there was a pistol in the door.").

[16]/*Id.* at 70-71.

[17]/*Id.* at 23-24.

[18]/*Id.* at 25-26; *see* Doc. 22-5.

[19]/Doc. 21 at 16.

Case No. 5:14-CR-00289
Gwin, J.

## II. Legal Standards

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."[20] "[S]topping an automobile and detaining its occupants constitute[s] a 'seizure' within the meaning of th[e] [Fourth] Amendment[], even though the purpose of the stop is limited and the resulting detention quite brief."[21]  An automobile stop is reasonable where the police have probable cause to believe that a traffic violation has occurred.[22]  When the police perform a lawful traffic stop, they are automatically entitled to request that both the driver and any passengers exit the car.[23]  Moreover, police officers may detain the driver until after they "finish[] making record radio checks and issuing a citation, because this activity would be well within the bounds of the initial stop."[24]

Although the Fourth Amendment generally requires police to have a warrant to conduct a search or seize property,[25] some exceptions exist.  Three are relevant to this case.  First, under the automobile exception to the warrant requirement, police may search a vehicle if they have probable cause to believe that it contains contraband or evidence of criminal activity.[26]  Second, under the plain view exception, "'if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to

---

[20]U.S. Const. Amend. IV.

[21]*Delaware v. Prouse*, 440 U.S. 648, 653 (1979) (internal citation omitted).

[22]*See id.* at 659, 661, 663.

[23]*United States v. Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) (per curiam)) (driver); *Maryland v. Wilson*, 519 U.S. 408 (1997) (passengers).

[24]*United States v. Campbell*, 549 F.3d 364, 373 (6th Cir. 2008) (internal quotation marks and citation omitted).

[25]*United States v. McCraney*, 674 F.3d 614, 618 (6th Cir. 2012).

[26]*United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (citations omitted).

Case No. 5:14-CR-00289
Gwin, J.

the object, they may seize it without a warrant.'"[27/]  And third, the government may inventory seized property, including a vehicle, as long as it does the search under standardized criteria and procedures.[28/]

Evidence obtained in violation of the Fourth Amendment, or evidence that constitutes "fruits" of such a violation typically must be suppressed.[29/]  But when the government "'can demonstrate by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means,'" that information or evidence should not be suppressed.[30/]

### III. Analysis

To begin, counsel for Patterson conceded at the suppression hearing that the traffic stop itself was lawful.[31/]  Under governing case law, it was thus permissible for the police officers to order both Patterson and the passengers to exit the vehicle,[32/] and for them to run records checks on Patterson and the car.[33/]  The Court credits Scherick's testimony that while waiting for Patterson to exit the car, he observed an open container of beer on the center console.[34/]

After Patterson exited the car, Scherick immediately arrested him for an open container violation.  The government says this arrest was pursuant to the Akron City Code,[35/] under which the

---

[27/]*United States v. Herndon*, 501 F.3d 683 (6th Cir. 2007) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)).

[28/]*Colorado v. Bertine*, 479 U.S. 367, 374 (1987).

[29/]*United States v. Alexander*, 540 F.3d 494, 501 (6th Cir. 2008) (internal citations omitted).

[30/]*Id.* at 502 (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)).

[31/]Suppression Hr'g Tr. at 85.

[32/]*United States v. Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) (per curiam)) (driver); *Maryland v. Wilson*, 519 U.S. 408 (1997) (passengers).

[33/]*United States v. Campbell*, 549 F.3d 364, 373 (6th Cir. 2008) (internal quotation marks and citation omitted).

[34/]Suppression Hr'g Tr. at 17, 52.

[35/]*See id.* at 18.

Case No. 5:14-CR-00289
Gwin, J.

open container offense is an arrestable fourth degree misdemeanor.[36]  In support, he points to the

Field Arrest/Summons Form he filled out at the time of the arrest, which reflects a charge under the

Akron City Code.[37]

For his part, Patterson contends that the arrest was under a state law that made Patterson's

conduct a non-arrestable minor misdemeanor.[38]  Patterson relies on the complaint filed in Akron

Municipal Court, which lists an open container offense in violation of Ohio state law.[39]  The Court

need not resolve this dispute.

The legality of an arrest in measured by an objective standard.  "The officer's state of mind

(except for the facts that he knows) is irrelevant to the existence of probable cause."[40]  In *Devenpeck*

*v. Alford*, the Supreme Court held that an arrest can be valid even when the offense as to which

probable cause exists is unrelated to the announced crime of arrest or booking crime.[41]   In

*Devenpeck*, a police officer who arguably had probable cause to arrest a suspect for impersonating

a police officer instead arrested him for recording their conversation.[42]  Under governing state law,

recording the conversation was not actually a crime at all.[43]  Nonetheless, the Supreme Court refused

to hold the arrest invalid, instead remanding for a determination of whether the officer had probable

cause to believe that the suspect had committed the unrelated crime of impersonating a police

---

[36] Akron, Ohio Code of Ordinances §§ 91.07(B)(2), 91.99(D).

[37] Doc. 22-5.

[38] *See* Ohio Rev . Code §§ 4301.62(B)(4) (defining the offense), 4301.99(A) (classifying the offense as a minor misdemeanor), 2901.26 (prohibiting, with several exceptions not relevant here, arrest for a minor misdemeanor).

[39] Doc. 21-1.

[40] *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (internal citation omitted).

[41] *Id.* at 153 & n.2.

[42] *Id.* at 149-50.

[43] *Id.* at 151-52.

Case No. 5:14-CR-00289
Gwin, J.

officer.[44]

Here, Scherick's observation of an open beer can gave him probable cause to believe a violation of the Akron open container law had occurred.  Even if Scherick had clearly meant to arrest Patterson for violating the non-arrestable state open container law–again, a question the Court does not reach–the arrest would still have been valid because Scherick also knew facts giving him probable cause to believe that Patterson had committed the arrestable offense of violating the Akron open container law.

Meanwhile, after securing the passengers, Miller attempted to begin a search of the car.[45]  The government argues that he had probable cause to do so because the presence of one open container in a car carrying multiple passengers provided probable cause to believe that additional open containers were present.[46]  But the Court need not pass on this conclusion either, because before Miller could begin his search, he saw a gun in plain view in the storage compartment of the still-open front driver side door.[47]  Because he observed the gun in plain view, his seizure of it was proper.[48]

As described above, both the arrest and the seizure of the gun were lawful.  Therefore, Patterson's argument that statements and other evidence obtained as a result of these actions should be suppressed as fruit of the poisonous tree must also fail.

Moreover, even if Miller had not seen the gun in plain view before his search began, and even

---

[44]/*Id.* at 153-56.

[45]/Suppression Hr'g Tr. at 68.

[46]/*See id.* ("[I]f somebody has an open container, anybody else can have one.").

[47]/*Id.* at 69 ("The instant I walked around the driver's door I could clearly see there was a pistol in the door.").

[48]/*See Texas v. Brown*, 460 U.S. 730, 740 (1983) ("There is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from the outside by either inquisitive passersby or diligent police officers."); *United States v. Campbell*, 549 F.3d 364, 373 (6th Cir. 2008) (applying *Texas v. Brown* to a case where the car door was open, exposing the interior, because a police officer had ordered an occupant out of the car during a traffic stop).

Case No. 5:14-CR-00289
Gwin, J.

if the search of the car had been unlawful, exclusion of the gun found in the car would still be
inappropriate because the government inevitably would have discovered while inventorying the car.
The officers lawfully ran Patterson's license and the car's registration upon making their lawful
traffic stop.[49/]  They discovered that Patterson's license was suspended, and that he did not own the
car.[50/]  Under Akron Police Department policy, these findings required them to inventory and tow the
car.[51/]  Upon doing so, they would have discovered the gun located in the front driver side door if they
had not already found it.

### IV. Conclusion

For the reasons above, the Court **DENIES** Patterson's motion to suppress.

IT IS SO ORDERED.

Dated: November 20, 2014                                    s/        *James S. Gwin*
                                                           JAMES S. GWIN
                                                           UNITED STATES DISTRICT JUDGE

---

[49/]*See United States v. Campbell*, 549 F.3d 364, 373 (6th Cir. 2008) (internal quotation marks and citation
omitted).
[50/]Suppression Hr'g Tr. at 23-24.
[51/]*See* Doc. 22-4.